UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MALIK RAINEY,

                              Plaintiff,

          – against –

COMM. JOSEPH PONTE, WARDEN
MONICA WINDLEY, DEPUTY WARDEN
SECURITY CAPUTO, CAPTAIN VALEJO,
and C.O. JACKSON,

                              Defendants.

**OPINION AND ORDER**

16 Civ. 6336 (ER)

Ramos, D.J.:

        *Pro se* Plaintiff Malik Rainey brings this action against Commissioner Joseph Ponte,

Warden Monica Windley, Deputy Warden Security Caputo, Captain Valejo, and Corrections

Officer Jackson (collectively "Defendants") pursuant to 42 U.S.C. § 1983, alleging violations of

his First, Fourth, Eighth, and Fourteenth Amendment rights stemming from the improper filming

of inmates in the showers and the strip searches conducted in religious areas.

        Before the Court is Defendants' motion to dismiss pursuant to Federal Rule of Civil

Procedure 12(b)(6).  For the reasons discussed below, Defendants' motion is GRANTED without

prejudice.

## I.  Factual Background[1]

        Plaintiff claims that Corrections Officer Jackson and Captain Valejo were assigned to Unit

15B at the George R. Vierno Center ("GRVC") on the Rikers Island Complex.  Jackson and

---

[1] The following facts are drawn from allegations contained in the Amended Complaint, Doc. 2, which the Court
accepts as true for purposes of the instant motion.  *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir.
2012).

Valejo are responsible for watching "the recording of detainees [and] inmates in the upper level shower." Plaintiff claims that while on duty, Jackson and Valejo "watched and encouraged" detainees and inmates to use the upper level showers in order to film them. They would also make obscene sexual gestures towards them. Plaintiff claims that once the inmates or detainees were filmed, these videos were uploaded onto the internet as pornography on sites like "BIT TORR, TORR, and dark angel."

Plaintiff also alleges that cameras were also placed in the chapel area where inmates are strip searched before court appearances. In addition to claiming that these videos are also uploaded onto pornographic websites, Plaintiff also seems to claim that the practice of conducting strip searches in a chapel is violative of his religious views.

Plaintiff claims that a preexisting order expressly forbids the placing of cameras in these areas and prohibits corrections staff from recording and uploading videos.

## II. Procedural Background

Plaintiff commenced this action on August 10, 2016. Doc. 2. On August 25, 2016, the Court issued an Order of Service requesting that Defendants waive service of summons. Doc. 6. On September 21, 2016, the waiver of service was returned executed as to Ponte, Windley, and Caputo (the "City Defendants"). Doc. 7. The waiver of service was returned unexecuted as to Valejo and Jackson, who could not be properly identified. Doc. 8. The City Defendants filed the instant motion on November 21, 2016. Doc. 12. On June 1, 2017, the Court directed Plaintiff to file a response to Defendants' motion by June 30, 2017. Doc. 15. Plaintiff did not file a response. Consequently, the Court will decide Defendants' motion to dismiss on the papers submitted.

### III. Standard of Review

On a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must accept as true all of the factual allegations from the complaint, and draw all reasonable inferences in the plaintiff's favor. *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014). However, this requirement does not apply to legal conclusions, bare assertions, or conclusory statements. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The complaint must adhere to Rule 8(a), which has been interpreted to require that it contain enough factual matter for the claim to be plausible on its face. *Id.* (citing *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Rule 8(a) "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79. If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] Complaint must be dismissed." *Twombly*, 550 U.S. at 570.

The same standard applies to motions to dismiss *pro se* complaints. *See Mancuso v. Hynes*, 379 F. App'x 60, 61 (2d Cir. 2010). However, the Court is also obligated to construe a *pro se* complaint liberally and to interpret a *pro se* plaintiff's claims as raising the strongest arguments that they suggest. *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011); *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam). The obligation to be lenient while reading a *pro se* plaintiff's pleadings "applies with particular force when the plaintiff's civil rights are at issue." *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (citing *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)). "However, even *pro se* plaintiffs asserting civil rights claims cannot withstand a motion to dismiss unless

their pleadings contain factual allegations sufficient to raise a right to relief above the speculative level." *Id.* (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). A complaint that "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks and brackets omitted); *see also Triestman*, 470 F.3d at 477 ("*[P]ro se* status 'does not exempt a party from compliance with relevant rules of procedural and substantive law.'") (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)) (internal quotation marks omitted).

## IV. Discussion

To state a claim under section 1983, a plaintiff must allege "that the conduct complained of was committed by a person or entity acting under color of state law, and that the conduct deprived a person of rights, privileges, or immunities secured by the Constitution." *Newton v. City of New York*, 566 F. Supp. 2d 256, 270 (S.D.N.Y. 2008) (citing *Palmieri v. Lynch*, 392 F.3d 73, 78 (2d Cir. 2004)). Section 1983 does not create any rights, but merely provides "a procedure for redress for the deprivation of rights [already] established." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted). The conduct complained of must have "deprived the plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States." *Eagleston v. Guido*, 41 F.3d 865, 876 (2d Cir. 1994). In the instant case, Plaintiff alleges that his First, Fourth, Eighth, and Fourteenth Amendment rights were violated through the existence of video cameras in GRVC's shower area and chapel and the dissemination of the recorded videos on the internet.

### A. Article III Standing

As an initial matter, Defendants argue that Plaintiff lacks standing to a raise a claim concerning the alleged distribution of the security videos. Memorandum in Support of Motion to

Dismiss the Complaint ("Defs. Memo") (Doc. 13) at 10–11. "Article III, § 2, of the Constitution restricts the federal 'judicial Power' to the resolution of 'Cases' and 'Controversies.' That case-or-controversy requirement is satisfied only where a plaintiff has standing." *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 273 (2008) (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332 (2006)). "[I]n order to have Article III standing, a plaintiff must adequately establish: (1) an injury in fact (*i.e.*, a concrete and particularized invasion of a legally protected interest); (2) causation (*i.e.*, a fairly traceable connection between the alleged injury in fact and the alleged conduct of the defendant); and (3) redressability (*i.e.*, it is likely and not merely speculative that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit)." *Id.* at 273-74 (internal quotation marks and alterations omitted) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). Generally, a plaintiff "has standing to seek redress for injuries done to him, but may not seek redress for injuries done to others." *Johnakin v. NYC Dep't of Corr.*, No. 11 Civ. 4807 (SLT) (LB), 2013 WL 5519998, at *9 (E.D.N.Y. Sept. 30, 2013) (quoting *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 166 (1972)). Therefore, to have standing to bring a claim under Section 1983, a plaintiff must show that he personally suffers from a violation of his civil rights. *Padberg v. McGrath–McKechnie*, 203 F. Supp. 2d 261, 275 (E.D.N.Y. 2002). Moreover, a *pro se* litigant cannot represent anyone other than himself. *See Cheung v. Youth Orchestra Foundation of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990). If a party lacks Article III standing, a court has no subject matter jurisdiction to hear its claims. *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005). Thus, the question of standing must be resolved prior to deciding a case on the merits. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998).

Here, Plaintiff has styled the Complaint as though he is asserting claims on behalf of a class of inmates and detainees. Specifically, Plaintiff alleges that "inmates and detainees" are "recorded or caught on camera" and that these videos are then uploaded to "Bit TORR, TORR, and Dark Angel" as pornography. He also claims that inmates and detainees are strip-searched in religious areas and that this process is also recorded and distributed. However, he does not allege that he has ever been personally videotaped, that the videos in which he appears were uploaded to these sites, or that persons outside of Rikers have seen videos of him. Additionally, Plaintiff does not claim that he has been strip-searched in a chapel, nor does he assert that he practices or belongs to a certain religion. Because Plaintiff does not allege that he has been personally harmed, and because a *pro se* plaintiff cannot bring claims on behalf of others, Plaintiff has no standing to assert his claims. Accordingly, Defendants' motion to dismiss is granted.

## B. Personal Involvement

To the extent that Plaintiff does have standing to assert his claims, the Court finds that all claims against Ponte, Windley, and Caputo should be dismissed for failure to allege personal involvement in the deprivation of Plaintiff's constitutional rights.

Personal-capacity suits "seek to impose individual liability upon a government officer for actions taken under color of state law." *Hafer v. Melo*, 502 U.S. 21, 25 (1991). Such suits *must* be premised on a certain level of personal involvement. *See Wright v. Smith,* 21 F.3d 496, 501 (2d Cir. 1994) ("It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'") (quoting *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir. 1991)). "An individual cannot be held liable for damages under § 1983 'merely because he held a high position of authority,'

but can be held liable if he was personally involved in the alleged deprivation." *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 127 (2d Cir. 2004) (quoting *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996)).

Here, Plaintiff does not allege that Ponte, Windley, or Caputo were involved in the video recordings or strip searches, nor does he claim that Defendants knew of the alleged wrongdoing and ordered or helped others engage in those acts. *See generally*, *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001) (defining personal involvement in two ways: "direct participation, such as "personal participation by one who has knowledge of the facts that rendered the conduct illegal," or indirect participation, such as "ordering or helping others to do the unlawful acts"). Plaintiff simply asserts that Ponte, Windley, and Caputo "pledge[d] an oath under the United States Constitution to . . . serve and protect." Complaint at 2. Thus, without a claim that they were present during the recordings or strip searches or that they were grossly negligent in their supervision of subordinates who committed the wrongful acts, Plaintiff's allegations are insufficient to establish personal involvement for the purposes of Section 1983 liability. *See Jean-Laurent v. Wilkerson*, 438 F. Supp. 2d 318, 326 (S.D.N.Y. 2006), *aff'd*, 461 F. App'x 18 (2d Cir. 2012) (dismissing claim against defendant who had not been alleged to have "been present or personally involved in any of the incidents" underlying the suit and was solely named as a defendant by "virtue of his rank").

Accordingly, Defendants motion to dismiss Plaintiff's claims against Ponte, Windley, and Caputo is granted.

**C. Eighth and Fourteenth Amendment Claims**

Although the Court finds that the Complaint should be dismissed for lack of standing, in an abundance of caution, the Court will address Plaintiff's Eighth, Fourteenth and First Amendment claims.

Plaintiff claims that Jackson and Valejo "encouraged" inmates and detainees to use the "upper showers" where they were stationed, in order to watch them and make obscene sexual gestures at them. Complaint at 4. Plaintiff does not allege that Jackson or Valejo directed him to use these showers or actually made any of these gestures to him. Additionally, although Plaintiff claims that inmates and detainees were recorded while in the shower, Plaintiff does not assert that Jackson or Valejo personally recorded any videos or uploaded any videos to the internet.

Construing the Complaint liberally, Plaintiff seems to assert that Jackson's and Valejo's actions violated his Eighth Amendment right to be free from cruel and unusual punishment. *See Boddie v. Schnieder*, 105 F.3d 857, 860–61 (2d Cir. 1997) ("[S]exual abuse of a prisoner by a corrections officer may in some circumstances violate the prisoner's right to be free from cruel and unusual punishment"). However, because Plaintiff alleges that he was a pre-trial detainee at the time of the alleged wrongful acts, his claims of alleged sexual abuse are analyzed under the Due Process Clause of the Fourteenth Amendment as opposed to the Cruel and Unusual Punishment Clause of the Eighth Amendment. *Holland v. City of N.Y.*, 197 F.Supp.3d 529, 545–46 (S.D.N.Y. 2016). Nevertheless, it is clear that any claims alleging a "serious threat to the health or safety of a person in custody should be analyzed under the same standard irrespective of whether they are brought under the Eighth or Fourteenth Amendment." *Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir. 2009); *see also Holland*, 197 F. Supp. 3d at 545–46 (applying Eighth Amendment standard to claim of sexual abuse brought by pre-trial detainee). Thus, to "prove a

violation of the Eighth Amendment, an inmate must show (1) that the deprivation alleged is 'objectively sufficiently serious' . . . and (2) that the defendant official possessed a 'sufficiently culpable state of mind' associated with 'the unnecessary and wanton infliction of pain.'" *Trammel v. Keane*, 338 F.3d 155, 161 (2d Cir. 2003).

Here, Plaintiff does not allege sufficient facts to show that Jackson's and Valejo's conduct was objectively serious. Jackson's and Valejo's inappropriate sexual gestures, without more, do not rise to a level of an Eighth Amendment violation. Courts in this Circuit have routinely dismissed cases involving inappropriate touching—not just sexual gestures as alleged here—as insufficient to sustain an Eighth Amendment claim. *See .e.g.*, *Garcia v. Watts*, No. 08 Civ. 7778 (JSR) (HBP), 2009 WL 2777085, at *7 (S.D.N.Y. Sept. 1, 2009) (dismissing Eighth Amendment claim because, among other things, "two instances of improper sexual contact, several inappropriate comments, and an allegedly unauthorized cell search-although abhorrent, does not rise to the level of cruel and unusual punishment"). Accordingly, Defendants' motion to dismiss claims against Jackson and Valejo is granted.

### D. First and Fourth Amendment Claims

Plaintiff claims that being filmed while strip searched in religious areas is improper and violate the First and Fourth Amendment rights of the inmates and detainees. Complaint at 6–7. "A regulation that impinges on a prisoner's freedom of religion must be rationally related to a legitimate penological interest to survive First Amendment scrutiny." *Jean-Laurent v. Wilkerson*, 438 F. Supp. 2d 318, 324 (S.D.N.Y. 2006), *aff'd*, 461 F. App'x 18 (2d Cir. 2012). Reasonable strip searches of prisoners, regardless of their religion, are generally acceptable

under the First Amendment because they further the compelling governmental interest of penological safety. *See Hurley v. Ward*, 549 F. Supp. 174, 186 (S.D.N.Y. 1982).

As noted previously, Plaintiff does not allege that he practices a certain religion or that any particular tenet of his religious practice or faith was burdened by the filmed strip searches. Moreover, Plaintiff asserts that detainees and inmates are strip searched before being taken to court. Courts have found that these type of searches are constitutional because they "serve the legitimate penological purpose of contraband from coming into and out of prisons and jails." *Thompson v. City of N.Y.*, No. 16 Civ. 824 (PKC), 2017 WL 1929552, at *2 (S.D.N.Y. May 9, 2017); *see also Myers v. City of N.Y.*, No. 11 Civ. 8525 (PAE), 2012 WL 3776707, at *9 (S.D.N.Y. Aug. 29, 2012) (finding that suspicionless strip searches of non-felony pretrial detainee at intake and upon leaving facility for court appearances were constitutional); *Israel v. City of N.Y.*, No. 11 Civ. 7726 (JMF), 2012 WL 4762082, at *3 (S.D.N.Y. Oct. 5, 2012) (finding strip searches before and after court visits and incident to random cell searches were reasonably related to legitimate security interests and did not violate Fourth Amendment).

## V. Leave to Amend

The Second Circuit has explained that "[a] *pro se* complaint is to be read liberally. Certainly the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citations and internal quotation marks omitted). Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, the "court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2).

Here, Plaintiff does not allege or even suggest that Ponte, Windley, or Caputo engaged in any conduct resulting in a deprivation of his constitutional rights. Thus, it is clear from the

Complaint that Plaintiff does not have any possibility of asserting plausible claims against these individuals. *See Cuoco*, 222 F.3d at 112 ("The problem with [plaintiff's] cause[ ] of action is substantive; better pleading will not cure it.  Repleading would thus be futile.  Such a futile request to replead should be denied.") (citing *Hunt v. Alliance N. Am. Gov't Income Trust*, 159 F.3d 723, 728 (2d Cir. 1998)); *see also Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 58 (2d Cir. 2002) (explaining that "[w]here it appears that granting leave to amend is unlikely to be productive . . . it is not an abuse of discretion to deny leave to amend . . . [and that] [a]n amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)") (citations omitted).

However, construing the Complaint liberally, the Court finds that it is possible for Plaintiff to allege additional facts and name particular defendants specific to his claim that he personally has been inappropriately filmed and that those videos of him were uploaded onto the internet.  Accordingly, the Court grants Plaintiff leave to amend the Complaint to include additional allegations regarding his claims about inappropriate filming in shower interiors and to name defendants personally involved in any alleged conduct.

## VI. Conclusion

For the reasons set forth above, Defendants' motion to dismiss is GRANTED without prejudice.

The Clerk of Court is respectfully directed to mail a copy of this Order to Plaintiff and terminate the motion, Doc. 12. Plaintiff is directed to amend his Complaint, if at all, by no later than August 17, 2017.

Furthermore, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Opinion and Order would not be taken in good faith; therefore, *in forma pauperis* status is denied for purposes of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

It is SO ORDERED.

Dated:    July 28, 2017
           New York, New York

Edgardo Ramos, U.S.D.J.